**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **MELVIN RODRIGUEZ,**<br>    **Plaintiff,**<br><br>        **v.**<br><br>**GALAXE.SOLUTIONS, INC.,**<br>    **Defendant.** | No. 3:24-cv-1737 (SRU) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Melvin Rodriguez, alleges that his former employer, GalaxE.Solutions, LLC ("GalaxE"), violated the Americans with Disabilities Act ("ADA")[1] and the Connecticut Fair Employment Practices Act ("CFEPA"). Compl., Doc. No. 1. Specifically, Rodriguez claims that he suffers from a bladder condition that requires him to make frequent trips to the bathroom, and that GalaxE discriminated against him because of his condition, failed to grant him a reasonable accommodation, and ultimately terminated his employment because of his accommodation request. *Id*.

GalaxE moves for summary judgment on all of Rodriguez's claims. Def.'s Mot. for Summ. J., Doc. No. 24. For the following reasons, GalaxE's Motion for Summary Judgment, Doc. No. 24, is **GRANTED**.

### I.    Background

GalaxE "provides technology and consulting services to companies operating in high-stakes environments," including Cigna, a health insurance company. Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 2. On or about August 1, 2022, GalaxE hired Rodriguez

---

[1] Rodriguez refers to the ADA Amendments Act of 2008 ("ADAAA") in his complaint and briefing. The ADA and the ADAAA are referred to collectively as the ADA in this Order.

as a Service Desk Agent and placed him in its Hartford, Connecticut office, which exclusively served Cigna. *Id*.; Compl. ¶¶ 11-12. Accordingly, Rodriguez was assigned to the Cigna team, meaning that he was responsible for providing technical support to Cigna's users by fielding their tickets and calls. Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 2-3. Rodriguez was a salaried employee in that role. Compl. ¶ 17.

After completing his GalaxE onboarding, Rodriguez enrolled in Cigna's mandatory eight-week training course for Service Desk Agents in October 2022. Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 3. During Rodriguez's training, Pierce Shellhorn, a Cigna Technical Support Analyst, noticed that Rodriguez "ha[d] a tendency to look down at his phone or something else," "recline[d] back a lot and at times [would] look down at the hall like [he was] talking to someone," and had "gone off camera without explanation twice and for two minutes each." *Id*. at 4. Rodriguez did so despite knowing that Cigna expected him to always keep his camera on and to message a trainer before stepping away from his computer. *Id*. Shellhorn communicated his observations in person to Matthew Davidson, Rodriguez's GalaxE Supervisor, and via email to Will Feliciano, Cigna's Training Team Lead. *Id*. at 3.

At some point during training, Feliciano allegedly told staff—including Rodriguez— that GalaxE was looking for employees with "strong bladders" who could wait until designated break times to use the bathroom. Pl.'s Mem. of L. in Supp. of Obj. to Def.'s Mot. for Summ. J., Doc. No. 27, at 5.[2] Rodriguez has suffered from a bladder condition his entire adult life. *Id*. at 6. His condition "necessitates frequent and urgent trips to the bathroom on a daily basis." *Id*. Without frequent bathroom breaks, Rodriguez asserts that his "ability to perform an IT job is substantially impaired as it results in being in significant physical distress and urinating on

---

[2] Rodriguez claims that GalaxE employs Feliciano, even though Cigna—and not GalaxE—was Feliciano's employer. Compl. ¶ 28; Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 3.

himself in the workplace." *Id*. Rodriguez has never been formally diagnosed by a medical professional, purportedly because he "lacked health insurance and funds for health care." *Id*.

Multiple trainers observed performance deficiencies during Rodriguez's eight-week training period with Cigna. Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 4. At one point, Feliciano outlined a list of issues with Rodriguez's work behavior, including that Rodriguez repeatedly turned off his camera, stepped away from his computer without permission, used his cell phone at work, and removed his headset from his ears but not his head so that it looked like his headphones were still on. *Id*. at 5. Eventually, Davidson gave a "stern [email] reminder" that Rodriguez needed to keep his camera on, be visible on camera, limit distractions, and communicate with trainers before stepping away from his computer. *Id*. Rodriguez claims that he never saw that email. *Id*.

Rodriguez also alleges that at some point during his training he sent Davidson a copy of Occupational Safety and Health Administration ("OSHA") regulations[3] that outline employees' right to bathroom access. Pl.'s Mem. of L. in Supp. of Obj. to Def.'s Mot. for Summ. J., Doc. No. 27, at 4. Rodriguez did so because he noticed, after taking an emergency bathroom break, that his computer screens were black and his logins no longer worked. *Id*. Rodriguez claims that Davidson told him that the OSHA regulations did not apply in GalaxE's Hartford office. *Id*. Although Davidson, in his deposition, did not deny having a conversation about OSHA regulations with Rodriguez, Davidson did not recall speaking with Rodriguez about Rodriguez's bladder condition. *Id*. at 7.

---

[3] Rodriguez cites to 29 C.F.R. §§ 1910.141, 1926.51, and 1298.110, which he summarizes as requiring employers to: "[p]ermit workers to leave their work area to use the restroom as needed[;] [p]rovide an acceptable number of restrooms for the current workforce[;] [a]void putting unreasonable restrictions on bathroom use[;] [and] [e]nsure that restrictions on restroom use do not cause extended delays." Pl.'s Mem. of L. in Supp. of Obj. to Def.'s Mot. for Summ. J., Doc. No. 27, at 8.

On November 9, 2022, Rodriguez met with GalaxE's Human Resources Generalist Stephanie Reidinger.  Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 6.  At that meeting, Rodriguez expressed that he felt like he was being singled out by Cigna trainers because he was "learning at a slower pace than others."  *Id*.  When asked why he frequently stepped away from his desk, Rodriguez explained that it "regularly takes him 20-30 minutes to empty his bowels" and that "5 minute bathroom breaks are not enough when he must go 'number 2.'"  *Id*.  At some point in the conversation, Rodriguez informed Reidinger that OSHA regulations entitled him to use the restroom.  *Id*.  Reidinger responded by telling Rodriguez that he should request an accommodation if he needed more time for bathroom breaks.  *Id*. at 7.  Rodriguez did not request any accommodation.  *Id*.  Reidinger memorialized her conversation with Rodriguez in an email sent on November 10, 2022.  Pl.'s Mem. of L. in Supp. of Obj. to Def.'s Mot. for Summ. J., Doc. No. 27, at 9.

After his meeting with Reidinger, Rodriguez began fielding calls under the supervision of Cigna's trainers.  Many of the same performance deficiencies Rodriguez exhibited during his training course reappeared.  Feliciano explained at his deposition that Rodriguez often took his headset off, turned off his camera, and walked away from his desk without permission.  Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 7-8.  Rodriguez also apparently would not pay adequate attention to users when they asked for help, did not understand company terminology, and failed to properly communicate with trainers when he did not know how to deal with a request for assistance.  *Id*. at 8.  Ali Hershman, a Cigna trainer, later listened to Rodriguez's calls and communicated her impressions via email to her Cigna and GalaxE colleagues.  *Id*. at 9.  That email, sent on November 22, 2022, noted that Rodriguez "[was] often

short tempered on calls," "often sigh[ed] and mutter[ed] under his breath," and "[went] silent often but [did] not let the colleague know he [was] placing them on hold[.]" *Id*.

A week after Hershman sent her email, Feliciano formally asked GalaxE to immediately remove Rodriguez from the Cigna contract. *Id*. Shortly thereafter, on December 8, 2022, Feliciano wrote that Rodriguez's "behavior issues . . . were identified and documented in several emails and discussions" with Rodriguez, but Rodriguez had "refused" to adhere to Cigna's policies. *Id*. at 9-10. Reidinger and Davidson then communicated to Rodriguez that he was terminated. *Id*. at 10. Rodriguez did not reference his bladder condition at his termination meeting. *Id.*

On or about August 15, 2023, Rodriguez filed a complaint against GalaxE with both Connecticut's Commission on Human Rights and Opportunities ("CHRO") and the United States Equal Employment Opportunity Commission ("EEOC"). Compl. ¶¶ 35-36. On or about August 9, 2024, Rodriguez received a Release of Jurisdiction from the CHRO, *id*. at ¶ 37, and on or about September 5, 2024, he received a right to sue letter from the EEOC. *Id*. at ¶ 38.

Rodriguez then initiated the instant action against GalaxE on October 31, 2024. *See* Compl., Doc. No. 1. After discovery, GalaxE moved for summary judgment on all of Rodriguez's claims. *See* Def.'s Mot. for Summ. J., Doc. No. 24.

## II.     Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). When ruling on a summary judgment motion, the court must construe the facts of

record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party").  When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249–50.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Regarding materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.  *Id.* at 247–48.  To present a "genuine" issue of material fact, there must be contradictory

6

evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

### III. Discussion

Rodriguez alleges that GalaxE violated the ADA and the CFEPA in three ways. Namely, Rodriguez claims that GalaxE discriminated against him because of his bladder condition, failed to grant him an accommodation for his bladder condition, and retaliated against him for requesting an accommodation.

#### a. Counts One and Four

In Counts One and Four, Rodriguez asserts that GalaxE "interfered with [Rodriguez's] privilege of employment on the basis of [Rodriguez's] disability," "discriminated against [Rodriguez] in such a way that it adversely affected his status as an employee," "terminated [Rodriguez's] employment," "treated [Rodriguez] adversely different from similarly situated employees," and "intentionally discriminated against the plaintiff on the basis of disability[.]"

7

Compl. ¶¶ 40, 53.  Count One is based on the ADA, 42 U.S.C. § 12101, et seq., and Count Four

relies on the CFEPA, Conn. Gen. Stat. § 46a-60b, et seq.

Courts employ the *McDonnell Douglas* burden-shifting framework used in Title VII

cases to assess employment discrimination claims brought under the ADA or the CFEPA.  *Paiva*

*v. City of Bridgeport*, 2019 WL 3842400, at \*6 (D. Conn. Aug. 15, 2019).  That framework

requires first that a plaintiff establish a prima facie case of discrimination.  To do so under the

ADA, a plaintiff must show that:

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the
> ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or
> without reasonable accommodation, and (4) he suffered adverse employment action
> because of his disability.

*Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  The prima facie case

for a CFEPA discrimination claim is essentially the same, with "[t]he only relevant difference"

being how to "defin[e] physical disability."  *Hopkins v. New Eng. Health Care Emps. Welfare*

*Fund*, 985 F. Supp. 2d 240, 256 (D. Conn. 2013).

GalaxE does not dispute that it is subject to the ADA and CFEPA or that Rodriguez was

qualified to perform the duties of a Service Desk Agent.  Instead, GalaxE contests whether

Rodriguez can be considered disabled under those statutes.

The ADA and the CFEPA define disability differently.  Under the ADA, a person is

disabled when there is "(A) a physical or mental impairment that substantially limits one or more

major life activities of such individual; (B) a record of such an impairment; or (C) being regarded

as having such an impairment."  42 U.S.C. § 12102(1).  Put more simply, a key question is

whether a plaintiff "had, or was regarded as having, a substantial limitation of a 'major life

activity,' which is defined as 'functions such as caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working.'"  *Dawson v. Sec. Servs. of*

*Conn., Inc.*, 2022 WL 17477601, at *12 (D. Conn. Dec. 6, 2022) (quoting 29 C.F.R. § 1630.2(i), and *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005)); *see also Gaube v. Day Kimball Hosp.*, 2015 WL 1347000, at *6 (D. Conn. Mar. 14, 2015) (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 147 (2d Cir. 2002)) (laying out three-prong test used to assess ADA employment discrimination claims).  "To show a substantial limitation in 'working,'" a plaintiff must demonstrate that their "limitation affects the ability to perform a class . . . or broad range of jobs." *Dawson*, 2022 WL 17477601, at *12 (quoting *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020)).

The CFEPA, for its own part, is "broader than the ADA or the ADAAA, because it covers 'chronic' impairments even if not permanent" and "does not require that the chronic impairment 'substantially limit' a major life activity." *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 212 (D. Conn. 2012) (internal citations omitted).  Under the CFEPA, an individual is physically disabled when they have "any chronic physical handicap, infirmity, or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness[.]"  Conn. Gen. Stat. § 46a-51(15).  The statute does not define "chronic," "handicap," "infirmity," or "impairment."  Consequently, courts have typically defined those words by relying on those words' dictionary definitions.  *Dawson*, 2022 WL 17477601, at *13 (internal citation omitted) ("The terms 'handicap, infirmity, or impairment' are 'to be construed according to their common dictionary definitions.'"); *Haggerty v. Kaycan, Ltd.*, 2021 WL 1518415, at *4 (D. Conn. Apr. 15, 2021) (explaining various definitions of "chronic" used by courts).

Rodriguez asserts that his bladder condition constitutes a disability under both the ADA and the CFEPA.  Regarding the ADA definition, Rodriguez explains that his "ability to perform

9

an IT job is substantially impaired as it results in being in significant physical distress and urinating on himself in the workplace." Pl.'s Mem. of L. in Supp. of Obj. to Def.'s Mot. for Summ. J., Doc. No. 27, at 11. With regards to his CFEPA claim, Rodriguez argues that his impairment is "chronic" because he has suffered from the bladder condition for his entire adult life.

The problem for Rodriguez is that he does not provide any medical documentation of his bladder condition. "Courts in the Second Circuit have consistently held that when a plaintiff fails to offer any medical evidence substantiating the specific limitations to which he claims he is subject due to his conditions, he cannot establish that he is disabled within the meaning of the ADA." *Buotote v. Illinois Tool Works, Inc.*, 815 F. Supp. 2d 549, 557 (D. Conn. 2011) (collecting cases). The same rule applies to CFEPA claims, which "require[] corroborating evidence for a claim of chronic disability." *Haggerty*, 2021 WL 1518415, at *5 (citing *Buotote*, 815 F. Supp. at 557).

Based on the record before me, I cannot conclude that Rodriguez is disabled under the ADA and the CFEPA. Rodriguez's "failure to provide any medical evidence of his condition . . . precludes his ailment from qualifying as a disability under the ADA." *Fasan v. McRoberts Protective Agency, Inc.*, 2015 WL 1285909, at *4 (E.D.N.Y. Mar. 20, 2015). Similarly, "[s]ummary judgment is warranted when—as here—a plaintiff offers no medical support in the record" to substantiate his CFEPA claim. *Haggerty*, 2021 WL 1518415, at *5 (cleaned up). Therefore, I grant summary judgment to GalaxE on Counts One and Four.

### b. Counts Two and Five

Rodriguez asserts in Counts Two and Five that he requested reasonable accommodations, but that GalaxE denied them, causing Rodriguez "harms and loses." Compl. ¶¶ 47-48, 58.

Count Two arises out of the ADA, and Count Five is based on the CFEPA, Conn. Gen. Stat. § 46a-60(b)(1).

To state a prima facie case for failure to accommodate under the ADA and CFEPA, a plaintiff must demonstrate that:

> (1) he was disabled within the meaning of the ADA/CFEPA; (2) his employer is subject to the ADA/CFEPA and had notice of his disability; (3) he was otherwise qualified to perform the essential functions of his job, with reasonable accommodation; (4) his employer has refused to make such accommodations; and (5) the failure to accommodate, his performance deficiencies, and the adverse employment action were connected.

*Morgan v. Golub Corp.*, 2020 WL 5215414, at *5 (D. Conn. Aug. 31, 2020) (internal citations omitted).

Because Rodriguez does not provide any medical documentation indicating that he is disabled under either statute, he fails to meet the first requirement of the prima facie case. But even if he did make the requisite showing of disability, he would still not succeed, because it is not clear from the record that Rodriguez ever requested accommodation from GalaxE. Instead, all that Rodriguez alleges is that GalaxE "wanted to enforce its bathroom policy on the plaintiff despite knowing that he had a 'weak bladder.'" Compl. ¶¶ 25, 33. There is no evidence before me that Rodriguez actually requested additional bathroom breaks or that he clearly communicated his bladder condition to GalaxE.[4] "Even in the discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

Because Rodriguez fails to satisfy essential elements of his failure to accommodate claims, I grant summary judgment to GalaxE on Counts Two and Five of Rodriguez's complaint.

---

[4] Rodriguez alleges that Feliciano told him that Cigna was looking for individuals with "strong bladders." Pl.'s Mem. of L. in Supp. of Obj. to Def.'s Mot. for Summ. J., Doc. No. 27, at 5. But Feliciano was employed by Cigna, not GalaxE, so that allegation cannot support his claim that GalaxE committed disability discrimination. *See* Def.'s Reply Mem. of L. in Further Supp. of Def.'s Mot. for Summ. J., Doc. No. 28, at 4.

### c. Counts Three and Six

In Counts Three and Six, Rodriguez claims that GalaxE retaliated against him after he requested reasonable accommodation. Compl. ¶ 51-52, 62. Count Three is based on the ADA, and Count Six draws from the CFEPA, Conn. Gen. Stat. § 46a-60(b)(4).

The prima facie case for a retaliation claim under the ADA and the CFEPA is the same and requires the plaintiff to show that:

> (1) [he] was engaged in protected activity; (2) the alleged retaliator knew that plaintiff was involved in protected activity; (3) an adverse decision or course of action was taken against plaintiff; and (4) a causal connection exists between the protected activity and the adverse action."

*Keithan v. Lakeside Env't Consultants, LLC*, 2025 WL 2053412 (D. Conn. July 22, 2025) (citing *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023)). A protected activity includes a request for reasonable accommodation. *Morgan*, 2020 WL 5215414, at *6.

Rodriguez alleges that he requested a reasonable accommodation, Compl. ¶ 51, 62, but he does not describe in his Complaint what accommodation he requested. Instead, he merely states that he informed GalaxE of "his need to take frequent breaks from work to use the bathroom" and that GalaxE "had a problem with plaintiff using the bathroom." Compl. ¶¶ 22-23. Rodriguez fails to elaborate on the requested accommodation because, on the record before me, he did not explicitly ask for any accommodation. Indeed, when Reidinger asked Rodriguez if he would like to pursue an accommodations request, Rodriguez responded that he "was not looking for 'extra breaks or additional time right now but would keep [the accommodation process] in mind.'" Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 7 (emphasis omitted). Strangely, during his deposition, Rodriguez did not even know what an accommodations process is. Dep. of Melvin Rodriguez, Ex. A to Caroline B. Park's Aff., Doc. No. 24-3, at 27 (Tr. 63:8-63:15). Without any concrete evidence that Rodriguez requested an

accommodation, there is not even "a mere 'scintilla' of evidence" in support of his Complaint's conclusory allegations. *Paiva*, 2019 WL 3842400, at *1 (quoting *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008)).

Even giving Rodriguez the benefit of the doubt that he requested additional bathroom breaks, Rodriguez would still fail to meet the fourth prong of his prima facie case—that a causal connection exists between his accommodation request and his termination. Rodriguez suggests that "negative emails" about his job performance only began after he cited OSHA regulations in his conversation with Reidinger on November 9, 2022. Pl.'s Mem. of L. in Supp. of Obj. to Def.'s Mot. for Summ. J., Doc. No. 27, at 9. He also claims that he never received notice of his performance deficiencies before his December 8, 2022 termination. *Id*. at 5. But the record plainly contradicts both those assertions. Shellhorn sent his email outlining issues with Rodriguez's behavior on October 28, 2022, more than a week before Rodriguez met with Reidinger. Ex. A to Caroline B. Park's Aff., Doc. No. 24-3, at 47 ("D-000001"). Feliciano also sent an email to Rodriguez on November 9, 2022 reminding Rodriguez that he needed to communicate with trainers before stepping away from his computer, *id*. at 48 ("D-000002"), and on December 8, 2022 wrote that Rodriguez's "behavior issues . . . were identified and documented in several emails and discussions[.]" Def.'s Mem. of L. in Supp. of Mot. for Summ. J., Doc. No. 24-1, at 9-10. The record is replete with examples of Rodriguez's performance deficiencies, and Rodriguez fails to provide any evidence that he was terminated because he needed to frequently use the bathroom.

Therefore, I grant summary judgment to GalaxE on Counts Three and Six of Rodriguez's Complaint.

IV.    **Conclusion**

13

For the foregoing reasons, GalaxE's Motion for Summary Judgment, Doc. No. 24, is

**GRANTED**.

The Clerk is instructed to close this case.

SO ORDERED at Bridgeport, Connecticut this 6th day of April 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge